```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE BANK OF NEW YORK MELLON TRUST         :
COMPANY, NATIONAL ASSOCIATION,            :
                                          :          10 Civ. 9420 (RMB)
                       Plaintiff,         :
                                          :          **DECISION & ORDER**
            -against-                     :
                                          :
SANTANDER HOLDINGS USA, INC.,             :
                                          :
                       Defendant.         :
------------------------------------------------------------X
```

**I.     Background**

On December 17, 2010, the Bank of New York Mellon Trust Company, National Association ("BNYM" or "Plaintiff"), in its capacity as indentured trustee to the holder of certain 4.375% junior subordinated deferrable interest debentures (the "Debentures"), filed a complaint (the "Complaint") in diversity for breach of contract and declaratory judgment against Santander Holdings USA, Inc. ("Santander" or "Defendant"). (See Compl., dated Dec. 17, 2010, ¶¶ 11, 41, 45.) BNYM alleges that Santander breached an indenture agreement entered into between BNYM's predecessor and Santander's predecessor, Sovereign Bancorp, Inc. ("Sovereign"), on September 1, 1999, and amended on February 26, 2004 (the "Indenture"), by "refus[ing] to pay [a] contractually-mandated Rate Increase" on the Debentures issued under the Indenture. (Compl. ¶ 3.)[1] BNYM alleges that the Indenture's "Change of Control" provision required Santander to pay the increased coupon rate to investors after Santander's parent, Banco Santander, acquired Sovereign on January 30, 2009 in exchange for American Depositary Shares ("ADSs") of Banco Santander. (Compl. ¶¶ 4, 29–30.) BNYM alleges that the only relevant

---

[1]   The Debentures were sold to investors as 4.375% contingent convertible trust preferred income equity redeemable securities ("Trust PIERS"). (See Compl. ¶¶ 3, 15.)

exception to the "Change of Control" provision requiring increased interest applies to acquisitions of Sovereign in exchange for "common stock"—not ADSs. (Compl. ¶ 4.)

On June 27, 2011, BNYM filed a motion for summary judgment, arguing, among other things, that (1) "the clear terms of the Indenture establish that the drafters did not intend to include ADSs within the term common stock" in the Change of Control carveout; and (2) "there is no relevant industry custom and usage" that shows that the terms "common stock" and "ADS" are equivalent. (Pl.'s Mem. of Law in Supp. of Its Mot. for Summ. J., dated June 27, 2011 ("Pl. Mem."), at 10, 16.)

On July 29, 2011, Santander filed an opposition to BNYM's motion and also cross-moved for summary judgment, arguing, among other things, that (1) "the Indenture does not suggest that the parties intended to exclude ADSs from the phrase 'common stock'"; and (2) "evidence of industry usage and course of dealing demonstrates that there was no 'change of control' under the Indenture." (Def.'s Mem of Law in Opp. to Pl.'s Mot. for Summ. J. and in Supp. of Its Cross-Mot. for Summ. J., dated July 29, 2011 ("Def. Mem."), at 6, 9.)

On August 19, 2011, BNYM filed a reply and opposition. (See Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. and in Further Supp. of Its Mot. for Summ. J., dated Aug. 19, 2011 ("Pl. Reply").) On September 9, 2011, Santander filed a surreply. (See Def.'s Surreply in Further Opp. to Pl.'s Mot. for Summ. J. and in Further Support of Its Cross-Mot. for Summ. J., dated Sept. 9, 2011 ("Def. Surreply").)

On June 27, 2011, at a conference before the Court, the parties waived their right to a trial of this matter and agreed that the Court's determination of their cross-motions would be

dispositive.  (See Minute Entry, dated June 7, 2011); Acuff–Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140, 142–43 (2d Cir.1998).  The Court heard oral argument on December 9, 2011.  (See Hr'g Tr., dated Dec. 9, 2011 ("Oral Arg. Tr.").)

The following facts are undisputed.

Section 2.04 of the Indenture provides in relevant part that "[e]ach Debenture will bear interest at a rate per annum of 4.375%," except that:

> (h)   In the event of a Change of Control, the Coupon Rate will be reset to . . . the greater of (i) 7.410% per annum and (ii) the rate determined by a reference agent selected by [Sovereign] as the market yield at that time for a non-convertible trust preferred security representing subordinated debt of the surviving entity . . . .

(Decl. of David B. Hennes, dated June 27, 2011 ("Hennes Decl."), Ex. D, § 2.04(h).)  Section 1.01 of the Indenture defines a "Change of Control" as, among other things, the following:

> (x)   Any Person acquires a beneficial ownership, directly or indirectly, through a purchase, merger or other acquisition transaction or series of purchase, merger or other acquisition transactions of shares of [Sovereign's] capital stock entitling that Person to exercise 50% or more of the total voting power of all shares of [Sovereign's] capital stock entitled to vote generally in elections of directors . . . ;
>
> (z)   The consolidation or merger of [Sovereign] with or into any other Person, any merger of another Person into [Sovereign], or any conveyance, transfer, sale, lease or other disposition of all or substantially all of [Sovereign's] properties and assets to another Person . . . .

(Hennes Decl., Ex. D, § 1.01.)  But, a Change of Control "shall not be deemed to have occurred if"

> [a]t least 90% of the consideration in the transaction or transactions otherwise constituting a Change of Control consists of shares of common stock traded or to be traded immediately following such event on a national securities exchange or the Nasdaq National Market and, as a result of such transaction or transactions, the

3

> Trust PIERS become convertible solely into such common stock and any rights attached thereto.

(Hennes Decl., Ex. D, § 1.01.)  The Indenture does not contain the term "ADSs" in the Change of Control carveout or anywhere else.  (See Hennes Decl., Exs. C, D.)

On January 30, 2009, Banco Santander and Sovereign consummated a merger in which Banco Santander acquired "the 75.65% of Sovereign's common stock that it did not already own," for a total of 100 percent ownership, in exchange for Banco Santander ADSs.  (Pl.'s Response to Def.'s Local Civ. R. 56.1 Statement of Undisputed Material Facts, dated Aug. 19, 2011 ("Pl. 56.1 Response"), ¶¶ 13, 14; Def.'s Response to Pl.'s Local Civ. R. 56.1 Statement of Undisputed Material Facts, dated July 29, 2011 ("Def. 56.1 Response"), ¶ 14.)  Pursuant to a warrant agreement entered into by Sovereign and BNYM on February 26, 2004 and amended on January 30, 2009 ("Warrant Agreement"), the Trust PIERS became convertible into Banco Santander ADSs.  (See Decl. of Kevin M. Ashby, dated July 29, 2011 ("Ashby Decl."), Ex. C, § 4.02(a)–(b), Ex. D.)  After the acquisition, a Trust PIERS holder asked Santander "why the Distribution Rate of the Trust PIERS had not been increased."  (Def. 56.1 Response ¶ 25.)  By letters dated March 27, 2009 and April 1, 2009, Santander responded that it did "not believe a 'Change of Control' occurred under the terms of the Debentures and therefore no step-up in the interest rate is required" because it believed that ADSs and common stock are "fundamental[ly] equivalent."  (Hennes Decl., Exs. J, K.)

**For the reasons set forth below, BNYM's motion for summary judgment is granted, and Santander's cross-motion for summary judgment is denied.**

## II.     Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under Pennsylvania law, when the court determines a contract to be clear and unambiguous in its terms, the court should construe the contract as a matter of law and summary judgment is appropriate." De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 827 (E.D. Pa. 2011).

In Pennsylvania, "[i]t is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982). "Disagreement between the parties over the proper interpretation of a contract does not necessarily mean that a contract is ambiguous." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 419 (3d Cir. 2011) (internal quotation marks omitted).

"[C]ustom in the industry or usage in the trade is always relevant and admissible in construing commercial contracts," Sunbeam Corp. v. Liberty Mut. Ins. Co., 781 A.2d 1189, 1193 (Pa. 2001), but "[w]here the parties do not agree upon a custom or usage, it is not binding on them unless it is so notorious, uniform and well established that a knowledge of them will be presumed." Lustig v. Facciolo, 188 A.2d 741, 743 (Pa. 1963) (internal quotation marks omitted).

### III.    Analysis

Preliminarily, the parties agree that Pennsylvania law is controlling pursuant to the Indenture's "Governing Law" provision. (See Def. 56.1 Response ¶ 10; Hennes Decl. Ex. C, § 112.)

BNYM argues that the Second Circuit's holding in Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 471 (2d Cir. 2010), controls the outcome here because the Maverick Court ruled that "ADSs are not merely common stock in a different form,"

id., in assessing an indenture with a change-of-control provision like the Indenture here. (See Pl. Mem. at 1.)[2] BNYM also argues that there is no relevant custom and usage supporting Santander's position that common stock includes the ADSs at issue here. (See Pl. Mem. at 16.) Santander contends that Maverick "is a different case, about a different indenture and different events, governed by different law." (Def. Mem. at 5; see Oral Arg. Tr. at 2:25–3:11.) Santander also proffers a purported expert on industry custom and usage in an attempt to demonstrate that "the Santander ADSs fall within the definition of 'shares of common stock.'" (Def. Mem. at 4 (quoting Hennes Decl., Ex. D.).)

Maverick is controlling, and BNYM prevails. In Maverick, the Second Circuit interpreted an indenture that, as the Indenture does here, afforded the note holders additional benefits upon the occurrence of a "Public Acquirer Change of Control." 595 F.3d at 462. The Maverick indenture defined a "Public Acquirer" as a person who "has a class of common stock traded on a United States national securities exchange." Id. There, an acquisition took place in which the acquirer's ADSs traded on the New York Stock Exchange, not its common stock. See id. at 463. The Second Circuit held that the acquirer was not a "Public Acquirer" because "the phrase 'common stock traded on a United States national securities exchange' . . . unambiguously does not include American Depositary Shares." Id. at 469.

Here, the Court finds that the term "common stock" used in the Indenture's Change of Control provision "unambiguously does not include" ADSs and, therefore, a Change of Control has occurred. Id.; see also Morrison v. Nat'l Australia Bank Ltd., 130 S. Ct. 2869, 2875 (2010);

---

[2] The Bank of New York was the original plaintiff in Maverick and lost the argument there by contending that the "undefined and unadorned phrase 'common stock traded on a United States national securities exchange' . . . should be deemed to include American Depositary Shares." 595 F.3d at 461, 69. In this case, BNYM advocates a position in line with the Second Circuit's holding in Maverick. See id. at 469; (Pl. 56.1 Response ¶¶ 39–44; Oral Arg. Tr. at 6:14–18.)

Pinker v. Roche Holdings Ltd., 292 F.3d 361, 367 (3d Cir. 2002).  Like the Maverick indenture, the Indenture here uses the term "common stock"—not "ADSs."  (Hennes Decl., Ex. D, § 1.01.); see Maverick, 595 F.3d at 469.  And, like the Maverick indenture, the Indenture here defines "Common Stock" as "the class of stock which, at the date of execution of this Indenture, is designated as common stock of [Sovereign]."  (Hennes Decl., Ex. C, § 101.); see Maverick, 595 F.3d at 469.  It does not include or mention ADSs.  (See Hennes Decl., Ex. C.)  Finally, like the Maverick indenture, the Indenture here "does not provide a definition of common stock in general."  Maverick, 595 F.3d at 469; (see Hennes Decl., Exs. C, D.)

  Maverick is not distinguishable, as Santander argues, because the Maverick indenture made "direct and indirect references to [ADSs] in other provisions," while the Indenture here contains no mention of ADSs anywhere.  (Def. Surreply at 1 (quoting Maverick, 595 F.3d at 469).)  Maverick rejected the proposition that, as a matter of custom and usage, the "undefined and unadorned phrase 'common stock' . . . should be deemed to include American Depositary Shares."  595 F.3d at 469.  The Maverick Court found that "ADSs are not merely common stock in a different form" because, among other reasons, "ADS may not have the same voting rights as an owner of shares of the issuer"; "the depositary is not obligated to notify [ADS] holders about any meeting of holders of the deposited securities"; "with respect to a particular underlying security, the ADSs themselves might not be fungible"; and "the price at which an ADS is traded is not simply a function of the value of the foreign issuer's underlying security."  Id. at 470–71.  The Maverick Court concluded under New York law that there is no "custom so well established that the parties must be presumed to have meant the term 'common stock' . . . to include ADSs."  Id. at 470.

Santander also asserts that Maverick's custom and usage holding is inapposite because Pennsylvania law is less restrictive than New York law and purportedly allows evidence of industry custom regardless of "whether or not the custom is continuous, uniform, and notorious." (Def. Mem. at 10.)  There is, in this Court's view, no meaningful difference between New York and Pennsylvania law with respect to evidence of industry custom and usage.  Just like New York, Pennsylvania requires that "[w]here the parties do not agree upon a custom or usage, it is not binding on them unless it is so notorious, uniform and well established that a knowledge of them will be presumed."  Lustig v. Facciolo, 188 A.2d 741, 743 (Pa. 1963); compare Maverick, 595 F.3d at 466, and British Int'l Ins. Co. Ltd. v. Seguros la Republica, S.A., 342 F.3d 78, 84 (2d Cir. 2003), with Lustig, 188 A.2d at 743, and Lancaster Transp. Co. v. New York & New Brunswick Auto Express Co., 146 A.2d 150, 151 (Pa. Super. Ct. 1958); California Fruit Exchange v. Henry, 89 F. Supp. 580, 586–87 (W.D. Pa. 1950).  And, even if, arguendo, the Court were to deem Santander's expert evidence admissible under Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), under Maverick, the Court would likely nevertheless find that there is no "uniform and unvarying" custom establishing that common stock and ADSs are synonymous.  595 F.3d at 469; see also Lustig, 188 A.2d at 743.

Santander's argument that by interpreting "common stock" not to include ADSs, there would result a "substantial windfall" for the Trust PIERS holders is unpersuasive.  (Def. Mem. at 22.)  Pennsylvania law is clear that a court "may not rewrite the contracts to provide protections that the contracts did not themselves provide."  Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 247 (3d Cir. 2008).

8

## IV. Conclusion and Order

For the foregoing reasons, Plaintiff's motion for summary judgment [#12] is granted, and Defendant's cross-motion for summary judgment [#16] is denied. Unless the parties advise the Court otherwise by December 15, 2011, this matter will be referred to United States Magistrate Judge James C. Francis IV for an inquest on damages.

Dated: New York, New York
      December 13, 2011



RICHARD M. BERMAN, U.S.D.J.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/13/11
```